GEORGE M. JONES, Respondent, v. SPRINGFIELD WATERWORKS COMPANY, Appellant.

St. Louis Court of Appeals, February 25, 1896.

1. Contract: NONPERFORMANCE: EFFECT OF UNAVOIDABLE ACCIDENT. Where a party creates a duty or charge upon himself by his own contract, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, since he might have provided against it by his contract.

2. ———— : ———— : ————: UNCONDITIONAL COVENANT IN LEASE FOR RENT. And *held* under this rule that a lessee, who expressly covenants, without limitation or condition, to pay a stipulated rent during his term for the demised premises and the right to use and consume water from a spring thereon, is not absolved from his obligation by the fact that he entered into the transaction to obtain pure water for a special purpose, and that during the term, though without the fault of the lessor, the water became polluted and in consequence entirely useless for such purpose.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

AFFIRMED.

*Massey & Tatlow* for appellant.

Where from the nature of the covenant it is apparent the parties contracted on the basis of the continued existence of a given thing, a condition is implied that if the performance becomes impossible from the total unfitness, destruction, or perishing of the thing, that shall excuse such performance and render such contract void.    Chitty on Contracts [11 Am. Ed.], sec. 1076; *Walker v. Tucker*, 70 Ill. 527; *Lowery v. Coal Company*, 54 Pa. St. 291; *Lord v. Wheeler*, 1 Gray, 282; Pollock's

Principles of Contracts, p. 361, and following; *Dexter v. Norton*, 46 N. Y. Rep. 62. Where the continued existence of a specific thing is essential to the performance of the contract, its destruction from no fault of either party operates as a discharge. *Taylor v. Caldwell*, 3 B. & S. 824; Pollock on Principles of Contracts, pp. 350, 363. And if the subject-matter of a contract or agreement be such that the performance of it would either consist in doing a forbidden act, or be so connected therewith as to be a substantial part of the same transaction, the law can not command the parties to perform that contract or agreement. Pollock's Principles of Contracts, pp. 241–319; Bishop on Contracts, sec. 471; *Cordes v. Miller*, 39 Mich. 581; *Downing v. Ringer*, 7 Mo. 585; *State ex rel. v. Dallas County*, 72 Mo. 329; *Friend v. Porter*, 50 Mo. App. 89; notes to *De Leon v. Trevino*, 30 Am. Rep. 106; *Sturvesant v. Mayor*, 7 Cowan, 585; *Commonwealth v. Intoxicating Liquors*, 115 Mass. 153; *Stewartson v. Lothrop*, 12 Gray, 52; *Jerome v. Bigelow*, 66 Ill. 452; *Wells v. People*, 71 Ill. 532. The city council of the city of Springfield had the right and authority to prohibit the appellant from pumping the water from Jones' spring into its pipes for distribution to the city, and to the citizens of said city of Springfield, if said water had become impure and its use dangerous to the health of the community. R. S., sec. 1492. 1 Dillon's Municipal Corporations [4 Ed.], secs. 89–91. If a contract is of such nature that it can not be carried into execution without reaching beyond the parties thereto, and exercising an injurious influence or effect over or upon the community at large, everyone has an interest in its suppression, and from a due regard to the public welfare it will be declared void. *Brooks v. Cooper*, 35 Am. Rep. 476; Bishop on Contracts, sec. 549; 9 Am. & Eng. Ency. of Law, p. 880, and authorities cited; Pollock's Principles of Contracts, p. 320.

*G. M. Sebree* for respondent.

When a party by his own contract creates a duty or charge upon himself, he is bound to make it good notwithstanding any accident by inevitable necessity; for he might have provided against it by his contract. *Davis v. Smith & Bradley*, 15 Mo. 467; *Harrison v. Railroad*, 74 Mo. 371; *Brinkerhoff v. Elliott*, 43 Mo. App. 193; *Gibson v. Perry*, 29 Mo. 246; *Beatie v. Coal Co.*, 56 Mo. App. 221. There is no implied covenant that the premises are fit for the purposes for which they are let, or that they will remain so. *Morse v. Maddox*, 17 Mo. 569; *Trustees v. Brett*, 25 Ind. 409; 12 Am. and Eng. Encyclopedia of Law, p. 1014; *Foster v. Perser*, 9 Cush. 248; *Dutton v. Garrish*, 9 Cush. 89; *Haslet v. Powell*, 30 Pa. St. 293; *Jaffe v. Hartian*, 56 N. Y. 398; *Libby v. Tolford*, 48 Me. 317; *Springer v. Citizens Natural Gas Co.*, 145 Pa. St. 430.

BIGGS, J.—Upon an inspection of the pleadings in this case, the circuit court directed a judgment for the plaintiff. It is a suit for rent under the following lease:

"This agreement and contract of lease, made and entered into this 21st day of July, 1887, by and between Geo. M. Jones, of the city of Springfield, Greene county, Missouri, party of the first part, and the Springfield Water Company, a corporation duly incorporated and existing under and by virtue of the laws of the state of Missouri, and located at said city of Springfield, Greene county, Missouri, party of the second part, witnesseth:

"That said Jones, party of the first part, hereby rents and leases to the Springfield Water Company, the party of the second part, their successors and assigns, the following described real estate situated in

the city of Springfield, in Greene county, state of Missouri, viz.:

"A part of the southeast quarter of section 13, of township 29, of range 22, commencing at a point on the east side of Sherman street where it joins the south side of Chestnut street, which streets are described in deed of G. M. Jones to Springfield Wagon Company, dated September 20, 1894, proceeding on and along the south side of Chestnut street projected 442½ feet to the east side of Earle street projected south from J. M. Richardson's first addition to Springfield, Missouri, thence southerly along said east line to Earle street projected 423 1-2 feet to where the south line of Pine street projected from G. M. Jones' addition joins said east line of Earle street, thence westerly along said south line of Pine street as above projected 93 feet, thence southerly on a line parallel with Earle street projected 389 1-2 feet to the north line of the right of way of the Springfield & Southern Railroad and also the Fort Scott, Southeastern & Memphis Railroad (for their crossing at this point), thence easterly on and along said north line of the right of way of the Fort Scott, Southeastern & Memphis Railroad 223 1-2 feet to a point on the continuation of the center of rock fence, thence northerly along the center of said rock fence to a point situated 32 feet south of where the south line of Chestnut street projected adjoins the center line of said rock fence (this same point is 8 feet west and 17 feet north of the blaze of the west side of a walnut tree near by), thence westerly on and along a line parallel with the south side of Chestnut street projected 143 feet to the beginning, together with the right to use and consume all the water flowing from the spring of said leased premises, and to erect machinery upon said leased premises for the purpose of pumping water into the tanks, pipes and mains, of said Spring-

field Water Company (and subject to the conditions and reservations hereinafter mentioned), for the period of (16) years, that is to say commencing on the first day of August, 1887, and ending on the 31st day of July, 1903, for a price and sum of seven hundred and twenty dollars ($720) per annum, said rent payable monthly at the expiration of each month. And, as further payment and consideration for this lease, the said party of the second part agrees to lay,. as soon as pumping apparatus and machinery are put upon said leased premises, and not later than the ——— day of ——— 1887, a water supply pipe one inch in diameter from and connecting with the supply pipes of said Springfield Water Company to the residence of said Jones, near said spring, or to such point upon the premises as he may designate, and to supply water to said pipe and to maintain same in said pipe with the general pressure of said waterworks at all times during the existence of this lease and in such quantity as the said Jones, his heirs or assigns, may desire, not to exceed the mentioned quantity of fifteen hundred (1500) gallons per day. And, further, the said Jones reserves to himself and to his household, his heirs or assigns, the right to enter upon said leased premises through a convenient opening of gateway near the spring and to take fresh water from the spring itself at all times, such water as he or they may need for drinking purposes; and the said Jones further reserves to himself the right to go upon said leased premises for observation and pleasure at all convenient and proper seasons and times, though not in any manner to interfere with, or to in any way control or direct, any of the property or anything which may be erected thereon. The said party of the second part shall not be permitted to remove from off the said leased premises any earth, stone or other material, for the purpose

of selling or in anywise disposing of for profit. The said party of the second part are hereby permitted to lay their water supply pipes along and through the premises of said Jones along the lines of projected streets, so as to conduct the water from said spring and through said leased premises to pipes and mains of said Springfield Water Company. The said Springfield Water Company, party of the second part, hereby agrees to lease of said Jones, party of the first part, the premises herein described and to pay therefor and for the use of the water aforesaid as in this lease stated, that is to say the sum of seven hundred and twenty ($720) dollars per annum, and to pay the same monthly as herein required. And it is expressly stipulated that any failure on the part of said party of the second part to pay each and every installment of rent as it shall become due, to wit, on the last day of the month or within ten (10) days thereafter, shall, if said Jones shall demand in writing of said party of the second part possession of said leased premises; also this lease to cease and determine, and become forfeited at the time of such default in the payment of said rent and of the delivery of said party of the second part of said written demand for the possession of said premises, and the said party of the second part, its successors and assigns, shall upon such forfeiture of this lease as aforesaid deliver up to said Jones, his heirs or assigns, the possession of said premises upon said written demand therefor. And, if there be no default of this lease, said party of the second part shall deliver up to said Jones, his heirs or assigns, the peaceable possession of said premises at the expiration of this lease, to wit on the 31st day of July, 1903, without further notice or demand therefor. The said party of the second part, its successors or assigns, shall be per-

mitted to remove from said leased premises all portable machinery placed there by them.

"This lease executed in duplicate this day and date first herein written.

"Witness our hands and seals.

"GEORGE M. JONES,                    [SEAL]
"SPRINGFIELD WATER COMPANY,    [SEAL]
            "By B. P. PERKINS, President."

It was averred in the petition that the Springfield Water Company immediately entered upon and took possession of the leased premises, and held the same until July, 1889, when it sold out its plant to the defendant; that the defendant accepted the lease, and took possession under it, and continued to pay the rent until the month of October, 1894. The present action is for the rent of that month, which the defendant refused to pay. The answer admitted all averments. The liability to pay further rent was resisted on the ground that the water flowing from the spring had become impure and unfit for use. In support of this it was alleged that the Springfield Water Company was organized for the purpose of supplying the inhabitants of the city of Springfield with pure and wholesome water, and, with the view of increasing the supply of such water, it entered into negotiations with the plaintiff for the purchase of the water flowing from his spring and situated on the above described premises, which resulted in the making of the contract above set forth; that afterward in 1890, and from local causes arising after the execution of the contract, but through no fault of the plaintiff, the water from the spring became so polluted and poisoned as to render it unfit for use; whereupon the council of the city required the defendant to cease pumping the water into its mains, and that, by reason of this, the defendant quit using it, and has

removed from and tendered to the plaintiff the possession of the premises.

The theory of the answer is that a covenant on the part of Jones is to be implied that the water flowing from the spring would remain pure and fit for the defendant's use. This is against all of the authorities, whether the contract be treated as a lease of the premises with the water privileges as an incident, or as a purchase of the water for a term of years with the use of the adjacent land as an incident. In either case, the Springfield Water Company unconditionally bound itself to pay $720 each year for the full term, and the defendant as its successor must perform the agreement.

The principle is that, "where a party creates a duty or charge upon himself by his own contract, he is bound to make it good, if he may, notwithstanding any accident by inevitable necessity, *because he might have provided against it by his own contract.*" The courts of this state have been called upon to apply this principle. The first case is that of *Davis v. Smith*, 15 Mo. 469. There the plaintiff's intestate rented to the defendants a grist mill and carding machine for a stipulated rent. The action was for the rent. The defense was that, at the time of the execution of the lease, the posts upon which the mill building rested were rotten, and that, in consequence of this, the posts gave way shortly after the defendants entered under the lease, and the building fell, destroying the machinery. It was held that there was no implied warranty by the lessor that the posts were sound, and that the defendants were bound to pay the rent, their obligation to do so being unconditional.

In *Gibson v. Perry*, 29 Mo. 245, a storehouse was leased for a definite time, with an unconditional promise by the lessee to pay a stipulated rent. The

lease contained no covenant by the landlord to repair or rebuild. The suit was for a quarter's rent, and the defense was attempted to be made that the building had burned and the plaintiff had refused to rebuild. The defense was rejected, the supreme court holding that, as there was no express covenant by the landlord to rebuild, and as the promise of the defendants to pay rent was unconditional, their liability for rent for the full term was fixed. So in this court, in the case of *O'Neil v. Flannagan*, 64 Mo. App. 87, which presented precisely the same state of facts, the lessee was held for the rent.

In *Harrison v. Railroad*, 74 Mo. 364, the plaintiff sued for damages for the violation of an unconditional agreement on defendant's part to furnish cars on a day certain for the purpose of shipping a lot of cattle. The defense was that the defendant was prevented by inevitable accident from furnishing the cars at the stipulated time. The defense was disallowed, the court holding that, when a person agrees to do a prescribed thing in a prescribed time, he is liable for nonperformance notwithstanding his nonfulfillment of the contract was occasioned by unavoidable accident.

In *Wright v. Fullerton*, 60 Mo. App. 451, the defendant agreed for a consideration to construct a sewer through the plaintiff's premises. The city built the sewer, and the plaintiff was compelled to pay its cost. The plaintiff then brought her action for damages for breach of the contract. The defendant answered that the city authorities would not permit him to do the work. This was held to be no excuse, as his undertaking was unconditional.

The principle of these cases is applicable to all lawful undertakings, and, hence, we say it is a matter of no practical difference whether the contract be treated as an ordinary lease, or as a purchase of the

water privileges for sixteen years. In either case, if the Springfield Water Company wished to protect itself against the accidental destruction of the value of the spring, it should have done so by express covenants. As it is, we must assume that it contracted in view of such risks and that this matter controlled to some extent in determining the amount of the rent. To hold that there was an implied covenant by Jones that the waters of the spring should remain pure, would be making a new contract for the parties.

We, therefore, conclude that the facts stated in the answer constituted no defense, and that the judgment of the circuit court must be affirmed. All the judges concur.